B. John Casey (OSB No. 120025)
John.Casey@stoel.com
Elliott Williams (OSB No. 144835)
Elliott.Williams@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Christopher J. Renk (*pro hac vice* forthcoming)
chris.renk@arnoldporter.com
Michael J. Harris (*pro hac vice* forthcoming)
michael.harris@arnoldporter.com
Aaron P. Bowling (*pro hac vice* forthcoming)
aaron.bowling@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 W. Madison Street, #4200
Chicago, IL 60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| Nike, Inc., an Oregon corporation,<br><br>       Plaintiff,<br><br> v.<br><br>adidas AG, a foreign corporation,<br>adidas North America, Inc., a Delaware corporation, and<br>adidas America, Inc., an Oregon corporation,<br><br>       Defendants. | **Civil Action No.** 3:21-cv-1780<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**Demand for Jury Trial** |

Plaintiff Nike, Inc. (hereinafter "Nike"), by and through its undersigned counsel, files this Complaint for Patent Infringement against Defendants adidas AG, adidas North America, Inc., and adidas America, Inc. (collectively, "adidas"), and alleges as follows:

## INTRODUCTION

1.      Nike's mission is to bring inspiration and innovation to every athlete in the world, with the belief that if you have a body, you are an athlete.  Nike fulfills that mission, in part, by investing heavily in research, design, and development.  Through that investment, Nike strives to create game-changing technologies and products that enhance athletic performance, reduce injury, and maximize comfort, all while reducing waste.

2.      Nike's Flyknit is an example of those game-changing technologies.  Flyknit resulted from more than a decade of Nike's research and development, and it has been hailed as "the most groundbreaking sneaker innovation in over 40 years."  Nike's Flyknit technology provides a novel method of designing and manufacturing shoe uppers, which enables Nike to create footwear with excellent performance, design, and aesthetics—all while reducing materials and waste.  A Nike Flyknit shoe upper is shown below.

**A Flyknit Knitted Shoe Upper**



3.      Unlike Nike, adidas has forgone independent innovation.  Instead, it spent much of the past decade challenging several of Nike's patents directed to Flyknit technology. adidas's challenges included unsuccessful petitions at the U.S. Patent and Trademark Office's Patent Trial & Appeal Board that targeted two of Nike's patents at issue in this case.  Those challenges failed, as did adidas's subsequent appeals to the U.S. Court of Appeals for the Federal Circuit and the U.S. Supreme Court.  And while adidas unsuccessfully challenged Nike's patents, it continued to use Nike's patented technology without permission.  Today, adidas offers dozens of footwear products that infringe Nike's patents, including many of adidas's so-called "Primeknit" shoes.

## NATURE OF THE ACTION

4.      Nike is now forced to bring this action to defend its investments in innovation and to protect its technology by halting adidas's unauthorized use.  On December 8, 2021, Nike also requested that the U.S. International Trade Commission institute an investigation against adidas under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based on adidas's unlawful and unauthorized importation into the United States, sale for importation, and/or sale within the United States after importation of certain knitted footwear products that infringe Nike's patents protecting its Flyknit technology.

5.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*   Nike owns exclusive rights in the inventions claimed in U.S. Patent No. 7,814,598 ("the '598 patent"); U.S. Patent No. 8,266,749 ("the '749 patent"); U.S. Patent No. 8,898,932 ("the '932 patent"); U.S. Patent No. 9,060,562 ("the '562 patent"); U.S. Patent No. 9,510,636 ("the '636 patent"); U.S. Patent No. 9,743,705 ("the '705 patent"); U.S. Patent No. 9,907,350 ("the '350 patent"); U.S. Patent No. 9,918,511 ("the '511 patent"); and U.S. Patent No. 9,924,758 ("the '758 patent") (collectively, "the Asserted Patents").

6.      adidas has used and continues to use the claimed inventions of the Asserted Patents, without Nike's permission, by making, using, offering for sale, selling, and/or importing into the United States footwear products that practice the claimed inventions.

7.      Nike seeks, among other relief, an injunction preventing adidas from further infringing the Asserted Patents, and damages and/or a disgorgement of adidas's profits from its patent infringements.

## THE PARTIES

8.      Nike is an American multinational corporation and the world's leading designer of athletic footwear, apparel, and sports equipment.  Nike is a corporation organized and existing under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, OR 97005.

9.      adidas AG is a German corporation with its principal place of business at World of Sports, Adi-Dassler-Strasse 1, 91074 Herzogenaurach, Germany.

10.      adidas North America, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business located at 5055 N Greeley Avenue, Portland, Oregon 97217.  On information and belief, adidas North America, Inc. operates as a subsidiary of, and is controlled by, adidas International B.V., which in turn operates as a subsidiary of, and is controlled, by adidas AG.

11.      adidas America, Inc. is a corporation organized and existing under the laws of Oregon with its principal place of business located at 5055 N Greeley Avenue, Portland, Oregon 97217.   On information and belief, adidas America, Inc. operates as a subsidiary of, and is controlled by, adidas North America, Inc.

## JURISDICTION & VENUE

12.     Nike's causes of action for patent infringement against adidas arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq*., including section 271.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

13.     This Court has personal jurisdiction over each of the defendants for at least the following reasons:  (1) adidas has minimum contacts within the State of Oregon because its principal place of business within the United States is in the state; (2) adidas purposefully availed itself of the privileges of conducting business in the State of Oregon; (3) adidas sought protection and benefits from the laws of the State of Oregon based upon adidas AG's decision to incorporate its American subsidiary in the state; (4) adidas regularly conducts business within the State of Oregon, including by selling and offering to sell shoes in the State of Oregon that infringe the Asserted Patents;  and (5) Nike's causes of action arises directly from adidas's business contacts, patent infringement, and other activities in the State of Oregon.

14.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391, 1400(b).  adidas resides in this district because (i) adidas's American subsidiary is incorporated in the State of Oregon and (ii) adidas maintains a regular and established place of business in Portland, Oregon, and has committed acts of patent infringement in this district, at least by selling and offering to sell shoes that infringe the Asserted Patents in Portland, Oregon.

## FACTUAL ALLEGATIONS

A.     **Nike's Flyknit Technology**

15.     This case involves one of Nike's game-changing technologies: Nike's Flyknit technology.  When Nike first introduced Flyknit, the knitting industry hailed the technology as a "quantum leap":

> Nike Flyknit represents a quantum leap for flat knitting technology and heralds a new era for integrally knitted nonapparel products which can be manufactured on a large scale to meet global demand. Make no mistake – this is flat knitting technology's finest hour.

Hunter, Billy, *Nike Flyknit: Quantum leap for flat knitting*, KNITTING INDUSTRY (Feb. 26, 2012), *available at* https://www.knittingindustry.com/nike-flyknit-quantum-leap-for-flat-knitting/.

16.     Nike's Flyknit technology is used for uppers in athletic shoes, as shown in the example below.  Flyknit involves a novel method of designing and manufacturing uppers that allows Nike to use yarns made of recycled materials and to knit the upper to the exact shape necessary.   The resulting footwear excels in performance and aesthetics while reducing materials and waste.



**A Flyknit Knitted Shoe Upper**

17.     Nike's Flyknit technology is lightweight, breathable, and supportive.  It uses high-strength fibers to create lightweight uppers with targeted areas of support, stretch and breathability. Flyknit is created from strong, yet lightweight strands of yarn that have been woven into a one-

Page 6 - COMPLAINT FOR PATENT INFRINGEMENT

piece upper that secures an athlete's foot to the shoe platform.  Different yarns and knit patterns can be used to customize the fit and function of different areas, giving more support or flexibility as needed.  Because of its special construction, Flyknit technology provides a sock-like fit, but with the support and durability needed for sports and other athletic endeavors.

18.    Nike's Flyknit technology also eliminates inefficiencies in the conventional way of making uppers.  In the past, footwear manufacturers typically made uppers by piecing together multiple different materials to impart different properties to different areas of the upper.  For example, a manufacturer may use leather materials in the toe and heel areas of the upper to impart a relatively high degree of wear-resistance, and a manufacturer may use synthetic or natural textile materials in other areas of the upper to impart flexibility and air-permeability.  This often required sourcing materials from multiple suppliers, operating multiple machines, and coordinating multiple assembly line techniques, manufacturing steps, and individuals.  But with Flyknit technology, Nike can form uppers out of a single knitted material while still providing different textures or properties to different areas of the uppers.

19.    After more than a decade of research and development and an investment of more than $100 million, Nike unveiled Flyknit in February 2012, ahead of the 2012 London Summer Olympics.  At that time, industry commentators described Flyknit as "the most groundbreaking sneaker innovation in over 40 years."  Fink, Carly, *Nike: Sustainability and Innovation through Flyknit Technology*, NYU STERN CENTER FOR SUSTAINABLE BUSINESS (April 2017), *available at* https://www.stern.nyu.edu/sites/default/files/assets/documents/Nike_Carly_04.2017%20-%20Copy.pdf.

| **Running Footwear From the London 2012 Collection[1]** |
| --- |

---

[1] *See* https://naturalrunningcenter.com/2012/08/10/green-gold-london-2012-olympics/

113368045.2 0063718-00378



20.    Since then, Nike has adopted Flyknit technology in footwear products that span numerous sports, such as running, basketball, soccer, tennis, golf, and football, as well as for lifestyle footwear.  The illustrations below show examples of Flyknit's proliferation throughout Nike's product categories.



| Examples of Flyknit Incorporated in Nike's Product Categories | |
|---|---|
| LunarEpic Low Flyknit | Flyknit Free RN |
| Kobe 11 Elite 11 | Air Jordan Retro 1 Flyknit |
| Magista | Metcon DSK Flyknit |
| Women's Free TR Flyknit 2 | Flyknit Roshe Two |

21.     Flyknit has been adopted by elite professional and Olympic athletes around the world, including basketball great LeBron James, international soccer superstar Cristiano Ronaldo, and world record marathoner Eliud Kipchoge.  Flyknit styles have also become a popular option for the masses because of their comfort and aesthetic.  As a result, Flyknit is featured in many of Nike's lifestyle footwear products.  Because the upper is knitted, Nike is able to provide unique new shoe designs using Flyknit with aesthetics and performance features not previously possible.

Additionally, because Flyknit is created using yarn from reclaimed and recycled materials, it is an important part of Nike's drive toward increasing sustainability, reducing waste, and minimizing its carbon footprint.

22.     Flyknit technology is an important component of Nike's strategy and it is integral to Nike's success.  Nike continues to update and innovate Flyknit technology with new applications and expanded uses.

B.     **The Asserted Patents**

23.     Nike has taken steps to protect and defend its innovative Flyknit technology, including by obtaining and enforcing utility patents around the world.  Nike owns more than 300 issued utility patents directed to its Flyknit technology.

24.      The Asserted Patents relate to Flyknit technology.  Nike owns all right, title, and interest in each of the Asserted Patents.  The U.S. Patent and Trademark Office duly and legally issued each of the Asserted Patents.  A true and correct copy of each patent is attached as an exhibit to the Complaint as shown below.

| Patent Number | Issue Date | Expiration Date | Complaint Ex. |
|---|---|---|---|
| U.S. Patent No. 7,814,598 | October 19, 2010 | May 12, 2024 | A |
| U.S. Patent No. 8,266,749 | September 18, 2012 | March 3, 2024 | B |
| U.S. Patent No. 8,898,932 | December 2, 2014 | July 17, 2033 | C |
| U.S. Patent No. 9,060,562 | June 23, 2015 | July 10, 2032 | D |
| U.S. Patent No. 9,510,636 | December 6, 2016 | January 23, 2034 | E |
| U.S. Patent No. 9,743,705 | August 29, 2017 | March 3, 2024 | F |
| U.S. Patent No. 9,907,350 | March 18, 2018 | March 3, 2024 | G |
| U.S. Patent No. 9,918,511 | March 20, 2018 | March 3, 2024 | H |
| U.S. Patent No. 9,924,758 | March 27, 2018 | March 3, 2024 | I |

25.     The Asserted Patents are presumed to be valid.  35 U.S.C. § 282(a).

Page 10 - COMPLAINT FOR PATENT INFRINGEMENT

C.    **adidas Uses Flyknit Technology without Nike's Permission**

26.    Unlike Nike, adidas has forgone independent innovation.  Instead, adidas spent the past decade unsuccessfully challenging several of Nike's patents directed to Flyknit technology—all while using Nike's patented technology without permission.

27.    adidas announced its Primeknit shoes five months after Nike announced Flyknit. The industry immediately took note of the similarities between Nike's patented Flyknit technology and the adidas's Primeknit offerings.  *E.g.*, *Nike Flyknit:  Ready, Steady, Go!*, KNITTING INDUSTRY (July 31, 2012), *available at* https://www.knittingindustry.com/nike-flyknit-ready-steady-go/ ("adidas has just released its adizero Primeknit sho[e] which looks very similar to Flyknit.").

28.    Rather than seek a license to any of Nike's patents covering Flyknit technology, adidas instead opted to challenge several of them, all while marketing a number of different infringing shoe styles and following on Nike's innovation coattails into other sports (*e.g.*, basketball, soccer, golf, etc.).[2]  For example, adidas challenged Nike's U.S. Patent No. 7,347,011 ("the '011 Patent"), which is the original application in the Knitted Textile Upper Family.  That challenge is still ongoing with an appeal currently pending.  adidas also challenged Nike's European counterpart patent to the '011 Patent in Germany after Nike sued adidas in Germany based on infringement of that patent.  Although Nike was initially awarded a temporary injunction in Germany, the German courts ultimately denied Nike's request for a permanent injunction and revoked the German portion of Nike's European patent.

29.    adidas then threatened to attempt to invalidate two more of Nike's Flyknit-related patents (asserted U.S. Patent Nos. 8,266,749 and 7,814,598) in the same family if Nike did not give adidas a covenant not to sue.  Nike did not accede to adidas's ill-founded request, and  adidas

---

[2] *See, e.g.*, https://www.adidas.com/us/primeknit-shoes.

filed *inter partes* review ("IPR") proceedings at the Patent Office challenging those patents. *See adidas AG v. Nike, Inc.*, IPR2016-00921, Paper 31 (PTAB Feb. 19, 2019); *adidas AG v. Nike, Inc.*, IPR2016-00922, Paper 31 (PTAB Feb. 19, 2019). After several years and multiple appeals, adidas lost those baseless challenges and Nike's patents were vindicated. *See adidas AG v. Nike, Inc.*, No. 2019-1787, 2019-1788, Dkt. 65 (Fed. Cir. June 25, 2020); *id.*, Dkt. 69 (denying adidas's petition for writ of certiorari). Despite adidas's unsuccessful challenges, its implicit acknowledgment of the need for a covenant not to sue, and its acknowledgement of an ongoing Article III controversy due to the similarities between Nike's patented Flyknit technology and adidas's Primeknit styles, adidas failed to seek a license after the termination of its unsuccessful challenges to Nike's patents. Instead, adidas escalated and scaled its infringing footwear offerings.

30.     The adidas products identified in the table below are examples of the infringing products that adidas manufactures and sells within the United States (the "Accused Products"). Each of the Accused Products meets each and every limitation of at least one claim of one or more of the Asserted Patents.



| Examples of adidas Accused Products | | |
| --- | --- | --- |
| 4D Run 1.0 Shoes | 4DFWD Shoes | adidas by Stella McCartney Ultraboost 20 Shoes (Style 1) |
| adidas by Stella McCartney Ultraboost 20 Shoes (Style 2) | adidas By Stella McCartney Ultraboost Sandals | Adizero 11.0 Primeknit Football Cleats |

Page 12 - COMPLAINT FOR PATENT INFRINGEMENT



**Examples of adidas Accused Products**

| | | |
|---|---|---|
| Adizero Primeknit SK Cleats | Alphaedge 4D Shoes | Crazy 1 ADV Primeknit Sock Shoes |
| Crossknit DPR Golf Shoes | FutureNatural Shoes | Lucas Premiere Primeknit Shoes |
| NMD_R1 Primeknit Shoes | Pharrell Williams Superstar Primeknit Shoes | Phosphere Shoes |
| Predator Freak+ Firm Ground Cleats | Pro Boost Mid | PureBoost GO |
| Samba Sock Primeknit Shoes | Stabil Next Gen Primeblue Handball Shoes | Stan Smith Primeknit Shoes |



| Examples of adidas Accused Products | | |
| --- | --- | --- |
| Terrex Free Hiker COLD.RDY Hiking Boots | Terrex Free Hiker Hiking Shoes | Terrex Free Hiker Parley Hiking Shoes |
| Terrex Free Hiker Primeblue Hiking Shoes | Terrex Two Ultra Parley AP Shoes | Terrex Two Ultra Parley Trail Running Shoes |
| Tour360 XT Primeknit Shoes | Ultraboost 20 Lab Shoes | Ultraboost 20 Shoes |
| Ultraboost 20 x James Bond Shoes | Ultraboost 21 Shoes | Ultraboost 4.0 DNA Shoes |
| Ultraboost 5.0 DNA Shoes | Ultraboost 6.0 DNA x Parley Shoes | Ultraboost DNA 1.0 Shoes |
| Ultraboost DNA CC_1 Shoes | Ultraboost DNA x DFB Shoes | Ultraboost DNA x James Bond Shoes |
| Ultraboost Slip-On DNA Shoes | Ultraboost Summer.RDY Tokyo Shoes | Ultraboost Uncaged Lab |

Page 14 - COMPLAINT FOR PATENT INFRINGEMENT



| Examples of adidas Accused Products | | |
| --- | --- | --- |
| X Speedflow+ Adizero Firm Ground Cleats | X Speedflow+ Firm Ground Cleats | X Speedflow.1 Artifical Grass Cleats |
| X Speedflow+ FG | Y-3 Ultraboost 21 | ZG21 Motion Primegreen Boa Mid Golf Shoes |

31.     On information and belief, adidas has infringed and continues to infringe the Asserted Patents within the meaning of 35 U.S.C. § 271, at least by making, using, selling, offering to sell, or importing the Accused Products into the United States without Nike's authorization.

32.     On information and belief, adidas promotes and sells each of its Accused Products at retail stores throughout the United States, including at retail stores located in Oregon.

33.     On information and belief, adidas promotes and sells each of its Accused Products nationwide, including in Oregon, through its website at https://www.adidas.com/us/.

34.     On information and belief, adidas had knowledge of the Asserted Patents.  For example, adidas's knowledge of the Asserted Patents and their patent families is evidenced by the reference to or citation to the Asserted Patents and/or their family members during prosecution of adidas's own patents.  Additionally, adidas's knowledge of the Asserted Patents and their patent families is evidenced by adidas's efforts to invalidate the Asserted Patents and related patents in IPR proceedings.  Finally, adidas also implicitly acknowledged its need for a license or a covenant not to sue on several of the Asserted Patents, as well as the existence of an Article III controversy, because of the similarity of the Flyknit technology described in those patents and adidas's

Page 15 - COMPLAINT FOR PATENT INFRINGEMENT

Primeknit footwear styles.  Despite these implicit and explicit acknowledgements, adidas has not sought a license, instead continuing and escalating its infringing activities.

35.     On information and belief, adidas had knowledge of the '598 patent and its patent family as evidenced, for example, by the reference and citation to the '598 patent and/or other related patents during prosecution of adidas's own patent applications.  *See, e.g.*, German patent documents        DE102011086742B4,        DE102012206062B4,        DE102013207163A1, DE102013207153B4,    DE102013207155B4,    DE102013207156A1,    DE102014202432B4, DE102014220087B4, DE102015219614A1, DE102015219636A1, and DE102017223746A1, all of which are or were believed to be assigned to adidas AG.  Additionally, on information and belief, adidas was aware of the '598 patent and its family because adidas filed multiple IPR petitions targeting different members of the same family to which the '598 patent belongs, including the IPRs of Nike's U.S. Patent No. 7,347,011 ("the '011 patent"), U.S. Patent No. Pat. No. 8,042,288 ("the '288 patent") to which the '598 patent claims priority, and the '749 patent. adidas also filed the petition in PTAB Case No. IPR2016-00921 against the '598 patent on April 19, 2016.  The PTAB instituted review of the '598 patent on October 21, 2016, and issued a final written decision on October 19, 2017, finding the challenged claims all patentable.  adidas appealed that decision, and on remand, the PTAB again found all challenged claims to be patentable in a final written decision dated February 19, 2019.  adidas again appealed, and on June 25, 2020, the Federal Circuit affirmed the PTAB's decision.  adidas filed the IPRs against the '598 patent (as well as the '749 patent and the related '288 Patent) after threatening to do so if Nike did not provide adidas a covenant not to sue, implicitly acknowledging its need for a license or covenant not to sue.

36.     On information and belief, adidas had knowledge of the '749 patent and its patent family as evidenced, for example, by the reference and citation to the '749 patent and/or other members of the family during prosecution of adidas's own patent applications. *See, e.g.*, Respondent adidas AG's German patents referenced above in connection with the '598 patent. Additionally, on information and belief, adidas was aware of the '749 patent and its family because adidas filed multiple IPR petitions targeting the '749 patent and different members of the same family to which the '749 patent belongs, including the IPRs of the '011 patent and the '288 patent to which the '749 patent claims priority, and the '598 patent. adidas also filed the petition in PTAB Case No. IPR2016-00922 against the '749 patent on April 19, 2016. The PTAB instituted review of the '749 patent on October 21, 2016, and issued a final written decision on October 19, 2017, finding the challenged claims all patentable. adidas appealed that decision, and on remand the PTAB again found all challenged claims to be patentable in a final written decision dated February 19, 2019. adidas again appealed, and on June 25, 2020, the Federal Circuit affirmed the PTAB's decision. adidas filed the IPRs against the '749 patent (as well as the '598 patent and the related '288 patent) after threatening to do so if Nike did not provide adidas a covenant not to sue, implicitly acknowledging its need for a license or covenant not to sue.

37.     On information and belief, adidas had knowledge of the '932 patent and its patent family as evidenced, for example, by the reference and citation to the '932 patent and/or other members of the family during prosecution of adidas's own patent applications. *See, e.g.*, U.S. Patent Nos. 10,455,885, 10,834,992, 10,939,729, 11,044,963, 10,034,519 and/or German patent documents DE102017210821A1 and DE102017223746A1, all of which are or were believed to be assigned to adidas AG.

38.    On information and belief, adidas had knowledge of the '562 patent and its patent family as evidenced, for example, by the reference and citation to the '562 patent and/or other members of the family during prosecution of adidas's own patent applications.  U.S. Patent Nos. 10,455,885, 10,834,992, 10,939,729, and 11,044,963, and/or German patent documents DE102013207155B4, DE102013207156A1, DE102014202432B4, DE102014220087B4, all of which are or were believed to be assigned to adidas AG.

39.    On information and belief, adidas had knowledge of the '636 patent and its patent family as evidenced, for example, by the reference and citation to the '636 patent and/or other members of the family during prosecution of adidas's own patent applications.  *See, e.g.*, U.S. Patent Nos. 10,455,885, 10,834,992, 10,939,729, and 11,044,963, and/or German patent documents    DE102013207155B4,    DE102013207156A1,    DE102014202432B4, DE102014220087B4, all of which are or were believed to be assigned to adidas AG.

40.    On information and belief, adidas had knowledge of the '705 patent and its patent family as evidenced, for example, by the reference and citation to the '705 patent and/or other members of the family during prosecution of adidas's own patent applications.  *See, e.g.*, Respondent adidas AG's German patents referenced above in connection with the '598 patent. Additionally, on information and belief, adidas was aware of the '705 patent and its family because adidas filed multiple IPR petitions targeting different members of the same family to which the '705 patent belongs, including the IPRs of the '011 patent and the '288 patent to which the '705 patent claims priority, as discussed above, and the '749 and '598 patents.

41.    On information and belief, adidas had knowledge of the '350 patent and its patent family as evidenced, for example, by the reference and citation to the '350 patent and/or other members of the family during prosecution of adidas's own patent applications.  *See, e.g.*, adidas

Page 18 - COMPLAINT FOR PATENT INFRINGEMENT

AG's German patents referenced above in connection with the '598 patent. Additionally, on information and belief, adidas was aware of the '350 patent and its family because adidas filed multiple IPR petitions targeting different members of the same family to which the '350 patent belongs, including the IPRs of the '011 patent and the '288 patent to which the '350 patent claims priority, as discussed above, and the '749 and '598 patents.

42. On information and belief, adidas had knowledge of the '511 patent and its patent family as evidenced, for example, by the reference and citation to the '511 patent and/or other members of the family during prosecution of adidas's own patent applications. *See, e.g.*, adidas AG's German patents referenced above in connection with the '598 patent. Additionally, on information and belief, adidas was aware of the '511 patent and its family because adidas filed multiple IPR petitions targeting different members of the same family to which the '511 patent belongs. For example, adidas filed the petition in PTAB Case No. IPR2013-00067 against the '011 patent, the first-filed patent of the family to which the '511 claims priority, on November 28, 2012. The PTAB instituted review of the '011 patent on May 17, 2013, and issued a final written decision on April 28, 2014, and Nike appealed. After multiple written decisions and appeals, the parties are currently disputing the most recent appeal of this matter related to the '011 patent, which was filed on April 29, 2021 and is currently pending at the United States Court of Appeals for the Federal Circuit (the "Federal Circuit"). adidas also filed an IPR petition against the '288 patent, which is in the family, and to which the '511 claims priority. Specifically, adidas filed the petitions in PTAB Case Nos. IPR2017-00263 and IPR2017-00264 against the '288 patent on November 14, 2016. The PTAB denied institution of both petitions on June 7, 2017. adidas also filed unsuccessful IPR petitions against other patents in this same family, including the '749 and '598 patents.

43.     On information and belief, adidas had knowledge of the '758 patent and its patent family as evidenced, for example, by the reference and citation to the '758 patent and/or other members of the family during prosecution of adidas's own patent applications. *See, e.g.*, German patent documents DE102011086742B4, DE102012206062B4, DE102013207163A1, DE102013207155B4, DE102013207153B4, DE102013207156A1, DE102014202432B4, DE102014220087B4, DE102015219614A1, DE102015219636A1, DE102017223746A1, all of which are or were believed to be assigned to adidas AG.

44.     Furthermore, to the extent necessary, this complaint now provides adidas with the requisite knowledge of the Asserted Patents.

45.     Nike, therefore, brings this action to defend its investments in innovation and to protect its technology by halting adidas's unauthorized use and profit.

### COUNT I
### (Patent Infringement under 35 U.S.C. § 271 of the '598 patent)

46.     Nike incorporates by reference each of the allegations set forth in paragraphs 1–45 above.

47.     The '598 patent is generally directed to a method of manufacturing an article of footwear comprising the steps of mechanically-manipulating a yarn with a circular knitting machine to form a cylindrical textile structure and removing at least one textile element (*e.g.*, an upper) from the textile structure.

48.     On information and belief, adidas directly infringes at least claims 1, 9 and 14 of the '598 patent under at least § 271(g).  For example, adidas imports into the United States the Pureboost Go, Pro Boost Mid Shoes, and Phosphere (collectively, the " '598 Accused Products"), which were manufactured using a process that satisfies each and every limitation of claim 1 because, on information and belief, adidas manufactures those shoes by mechanically-

Page 20 - COMPLAINT FOR PATENT INFRINGEMENT

manipulating a yarn with a circular knitting machine to form a cylindrical textile structure; removing at least one textile element from the textile structure; and incorporating the textile element into an upper of the article of footwear.  On information and belief, the '598 Accused Products are not materially changed by subsequent processes after importation, nor do those products become a trivial or nonessential component of another product after importation.

49.    On information and belief, adidas's Pureboost Go footwear are knitted by mechanically-manipulating a yarn with a circular knitting machine to form a cylindrical textile structure.  *See, e.g.*, *Pureboost Go*, ADIDAS, https://www.adidas.com/us/running_pureboost (last visited Dec. 6, 2021) ("A deconstructed *circular knit upper* enhances adaptability and freedom of movement for comfort.") (emphasis added).

50.    On information and belief, adidas's Pro Boost Mid Shoes are knitted by mechanically-manipulating a yarn with a circular knitting machine to form a cylindrical textile structure.  *See, e.g.*, *Pro Boost Mid Shoes*, ADIDAS, https://www.adidas.de/en/pro-boost-mid-shoes/FW9509.html (last visited Dec. 6, 2021) ("*Circular knit upper* with inner gore band") (emphasis added).

51.    On information and belief, adidas's Phosphere footwear are knitted by mechanically-manipulating a yarn with a circular knitting machine to form a cylindrical textile structure.    *See,    e.g.*,    *Phosphere    Shoes,*    ADIDAS,    *available    at* https://www.adidas.com.tr/en/phosphere-shoes/EG3489.html (last visited Dec. 6, 2021) ("adidas shoes with a circular knit upper . . . A seamless circular knit upper supports the foot while the ultra-soft midsole provides cloud-like cushioning.").

52.    On information and belief, the uppers for adidas's Pureboost Go, Pro Boost Mid Shoes, and Phosphere footwear are created by removing the textile element from the textile

structure and incorporating the textile element into the upper of the article of footwear. *See, e.g.*, "Tutorial: Whole Circular Knitting Process at a Glance," June 14, 2018, available at https://www.youtube.com/watch?v=VZYA68KQ4-I.   The photographs below show the textile element incorporated into the upper for adidas's Pureboost Go, Pro Boost Mid Shoes, and Phosphere.



**Pureboost Go**

**Pro Boost Mid Shoes**

**Phosphere**

53.    On information and belief, adidas's infringement has been willful, intentional, and deliberate.  adidas knew or should have known that importing, offering to sell, selling, and/or using

at least the '598 Accused Products would directly infringe the '598 patent, yet adidas infringed and continues to infringe the '598 patent.

54.     As a result of adidas's infringement of the '598 patent, Nike has suffered irreparable harm and damages.

55.     Nike has no adequate remedy at law for adidas's infringement of the '598 patent.

56.     On information and belief, adidas's infringement of the '598 patent will continue unless enjoined by this Court.

**COUNT II**
**(Patent Infringement under 35 U.S.C. § 271 of the '749 patent)**

57.     Nike incorporates by reference each of the allegations set forth in paragraphs 1–56 above.

58.     The '749 patent is generally directed to a method of manufacturing an article of footwear with a textile element, where the textile element is simultaneously knitted with a surrounding textile structure, and the textile element has a knitted texture that differs from the knitted texture in the surrounding textile structure.

59.     On information and belief, adidas directly infringes at least claims 1–9, 13–19, and 21 of the '749 patent under at least § 271(g).  For example, adidas imports into the United States at least the Phosphere, PureBoost Go, and Pro Boost Mid (collectively, the "'749 Accused Products"), which were manufactured using a process that satisfies each and every limitation of claim 1 because, on information and belief, adidas manufactures those shoes by simultaneously knitting a textile element with a surrounding textile structure, the knitted textile element having at least one knitted texture that differs from a knitted texture in the surrounding knitted textile structure; removing the knitted textile element from the surrounding knitted textile structure; and incorporating the knitted textile element into the article of footwear.  On information and belief,

Page 23 - COMPLAINT FOR PATENT INFRINGEMENT

the '749 Accused Products are not materially changed by subsequent processes after importation, nor do those products become a trivial or nonessential component of another product after importation.

60.     On information and belief, the knit upper for each of the Phosphere, PureBoost Go, and Pro Boost Mid styles is simultaneously knitted as a textile element with a surrounding textile structure, via a circular knitting process.  *See, e.g.*, *Phosphere Shoes,* ADIDAS, *available at* https://www.adidas.com.tr/en/phosphere-shoes/EG3489.html (last visited Dec. 6, 2021) ("adidas shoes with a circular knit upper . . . A seamless circular knit upper supports the foot while the ultra-soft midsole provides cloud-like cushioning."); *PureBoost Shoes*, ADIDAS, *available at* https://www.adidas.com/us/running_pureboost (last visited Dec. 6, 2021) ("[a] deconstructed circular knit upper [that] enhances adaptability and freedom of movement for comfort."); *Pro Boost Mid Shoes*, ADIDAS, *available at* https://www.adidas.de/en/pro-boost-mid-shoes/FW9509.html (last visited Dec. 6, 2021) (describing the shoe as having a "[c]ircular knit upper with inner gore band").

61.     On information and belief, the knitted textile element in the adidas Phosphere, PureBoost Go, and Pro Boost Mid have at least one knitted texture that differs from the knitted texture in the surrounding knitted textile structure.

62.     On information and belief, additional adidas knitted footwear products also potentially infringe at least claims 1–9, 13–19, and 21 of the '749 patent.  To the extent any of the adidas knit footwear styles asserted as infringing U.S. Patent Nos. 7,814,598, 8,898,932, 9,060,562, 9,743,705, 9,907,350, 9,918,511, and/or 9,924,758 are found and/or represented not to be of the knit-to-shape variety (or not manufactured via knit-to-shape techniques), then such styles

would infringe the '749 patent.  Nike reserves all rights to amend and/or supplement its Complaint and infringement contentions to assert infringement of the '749 patent for any such styles.

63.     On information and belief adidas's infringement has been willful, intentional, and deliberate.  adidas knew or should have known that importing, offering to sell, selling, and/or using at least the Phosphere, PureBoost Go, and Pro Boost Mid styles would directly infringe the '749 patent, yet adidas infringed and continues to infringe the '749 patent.

64.     As a result of adidas's infringement of the '749 patent, Nike has suffered irreparable harm and damages.

65.     Nike has no adequate remedy at law for adidas's infringement of the '749 patent.

66.     On information and belief, adidas's infringement of the '749 patent will continue unless enjoined by this Court.

### COUNT III
### (Patent Infringement under 35 U.S.C. § 271 of the '932 patent)

67.     Nike incorporates by reference each of the allegations set forth in paragraphs 1–66 above.

68.     The '932 patent is generally directed to an article of footwear that includes an upper comprising a knitted component that includes a foot part and an ankle part, and a skin layer that is thermally bonded to the knitted component and covers at least a portion of the foot part of the knitted component but absent from the ankle part of the knitted component.

69.     On information and belief, adidas directly infringes at least claims 11, 12, 14, and 15 of the '932 patent under at least § 271(a).  For example, at least adidas's Terrex Free Hiker Primeblue Hiking Shoes, Adizero Primeknit SK Cleats, Tour360 XT Primeknit Shoes, Terrex Free Hiker Parley Hiking Shoes, Terrex Free Hiker Hiking Shoes, Terrex Two Ultra Parley Trail Running Shoes, Terrex Two Ultra Parley AP Shoes, Terrex Free Hiker COLD.RDY Hiking Boots,

Page 25 - COMPLAINT FOR PATENT INFRINGEMENT

Stabil Next Gen Primeblue Handball Shoes, Predator Freak + Firm Ground Cleats, FutureNatural

Shoes, ZG21 Motion Primegreen Boa Mid Golf Shoes, and adidas by Stella McCartney Ultraboost

Sandal (collectively, the "'932 Accused Products") satisfy each and every limitation of claim 11

because, on information and belief, those shoes have an upper and a sole structure secured to the

upper, the upper comprising: a knitted component that includes (a) a foot part for covering at least

a portion of a foot of a wearer and (b) an ankle part for covering at least a portion of an ankle of

the wearer, the foot part and the ankle part being formed of unitary knit construction; and a skin

layer that is thermally bonded to the knitted component, the skin layer covering at least a portion

of the foot part of the knitted component and forming a portion of an exterior surface of the upper,

the skin layer being absent from the ankle part of the knitted component.  adidas thus directly

infringes the '932 patent by making, using, offering to sell, and/or selling the '932 Accused

Products.

70.    On information and belief, adidas has indirectly infringed and continues to

indirectly infringe at least claims 11, 12, 14, and 15 of the '932 patent within the meaning of at

least 35 U.S.C. § 271(b) and/or (c) by knowingly and intentionally inducing infringement and/or

contributing to the infringement of the '932 patent by providing and/or selling in the United States

the '932 Accused Products to customers and/or distributors of those products.

71.    On information and belief, adidas is currently actively inducing and has induced

infringement of the '932 patent under 35 U.S.C. § 271(b) through, among other things, the sale

and offer for sale in the United States of the '932 Accused Products to direct infringers that include,

without limitation, customers and/or distributors who use, sell, offer to sell, or import the '932

Accused Products, with the specific intent that the '932 Accused Products be used, sold, offered

for sale, or imported in an infringing manner.

113368045.2 0063718-00378

72.    On information and belief, adidas has encouraged and continues to encourage customers and/or distributors to use, sell, offer to sell, or import the '932 Accused Products in an infringing manner by providing product materials and directions instructing customers and/or distributors to use, sell, offer to sell, or import the '932 Accused Products in an infringing manner; by providing training, instructions, and/or technical support to customers and/or distributors instructing how to use the '932 Accused Products in an infringing manner; and by advertising, marketing, and promoting the use, sale, offers for sale, or importation of the '932 Accused Products in an infringing manner.  On information and belief, adidas has had specific intent to cause infringement of the '932 patent or was willfully blind to such infringement.

73.    On information and belief, adidas has also indirectly infringed and continues to indirectly infringe the '932 patent pursuant to 35 U.S.C. § 271(c) by contributing to the infringement of the '932 patent by providing and/or selling the '932 Accused Products in the United States to customers and/or distributors of the '932 Accused Products, structures and features of which constitute a material part of one or more claims of the '932 patent, and are not a staple article of commerce suitable for non-infringing uses, and are especially made and or adapted for use in infringing the '932 patent.

74.    On information and belief, adidas possessed and continues to possess intent to contributorily infringe the '932 patent because adidas knew that the structures and features of the '932 Accused Products are especially made or adapted for use in an infringement of one or more claims of the '932 patent and such features are not a staple article of commerce suitable for non-infringing uses.

75.    On information and belief, the direct infringers for adidas's contributory infringement include, without limitation, the customers and/or distributors who use the '932

Page 27 - COMPLAINT FOR PATENT INFRINGEMENT

113368045.2 0063718-00378

Accused Products, and to whom adidas sells and offers to sell the '932 Accused Products. adidas has contributed to these customers' and/or distributors' infringement by selling and offering to sell the '932 Accused Products to them, by advertising and promoting the '932 Accused Products as embodying a material component of the patented invention, and by encouraging and providing instructions to its customers and/or distributors for using, selling, offering for sale, and/or importing the '932 Accused Products as embodying a material component of the patented inventions.

76.    By way of example only and not limitation, the Terrex Free Hiker Primeblue Hiking Shoes has a Primeknit upper and a sole structure secured to the upper. The Primeknit upper includes a foot portion for covering at least a portion of a foot of a wearer and an ankle portion for covering at least a portion of an ankle of the wearer, as shown below. On information and belief, the foot portion and ankle portion of the Primeknit upper are formed as a unitary knit construction.



77.    On information and belief, the Terrex Free Hiker Primeblue Hiking Shoes has a skin layer that is thermally bonded to the knitted component. As shown below, the three stripes and beige colored layer identified by the arrow appear to be a skin layer that is thermally bonded to the knitted component. The three stripes and beige colored layer are on the exterior surface of

the upper and cover at least a portion of the foot part of the knitted component, but are absent from the ankle part of the knitted upper.



78.     On information and belief, adidas's infringement has been willful, intentional, and deliberate.  adidas knew or should have known that importing, offering to sell, selling, and/or using at least the '932 Accused Products would directly and/or indirectly infringe the '932 patent, yet adidas infringed and continues to infringe the '932 patent.

79.     As a result of adidas's infringement of the '932 patent, Nike has suffered irreparable harm and damages.

80.     Nike has no adequate remedy at law for adidas's infringement of the '932 patent.

81.     On information and belief, adidas's infringement of the '932 patent will continue unless enjoined by this Court.

## COUNT IV
### (Patent Infringement under 35 U.S.C. § 271 of the '562 patent)

82.     Nike incorporates by reference each of the allegations set forth in paragraphs 1–81 above.

83.     The '562 patent is generally directed to a method of manufacturing a knitted component for an article of footwear that includes knitting an upper with an integral knit tongue.

Page 29 - COMPLAINT FOR PATENT INFRINGEMENT

84.     On information and belief, adidas directly infringes at least claims 1–4 of the '562 patent under at least § 271(g).  For example, adidas imports into the United States the Y-3 Ultraboost 21, Ultraboost Summer.RDY Tokyo Shoes, Ultraboost Slip-On DNA Shoes, Ultraboost DNA CC_1 Shoes, Ultraboost 6.0 DNA x Parley Shoes, Ultraboost 4.0 DNA Shoes, Ultraboost 21 Shoes, Ultraboost 20 Shoes, Tour360 XT Primeknit Shoes, Terrex Two Ultra Parley Trail Running Shoes, Terrex Two Ultra Parley AP Shoes, Terrex Free Hiker Parley Hiking Shoes, Terrex Free Hiker Hiking Shoes, Samba Sock Primeknit Shoes, NMD_R1 Primeknit Shoes, Lucas Premiere Primeknit Shoes, FutureNatural Shoes, Adizero Primeknit SK Cleats, Adizero 11.0 Primeknit Football Cleats, PureBOOST Go Shoes, Crossknit DPR Golf Shoes, Terrex Free Hiker GTX, X Speedflow+ Adizero Firm Ground Cleats, X Speedflow+ Firm Ground Cleats, X Speedflow.1 Artificial Grass Cleats, X Speedflow+ FG, Ultraboost Uncaged Lab, and Terrex Free Hiker Primeblue Hiking (collectively, the " '562 Accused Products"), which were manufactured using a process that satisfies each and every limitation of claim 1 because, on information and belief, adidas manufactures those shoes by knitting a portion of the knitted component defining an upper with a knitting machine, the upper including a portion of at least one of an exterior surface of the knitted component and an opposite interior surface of the knitted component; and knitting an integral knit tongue that is of unitary knit construction with the upper with the knitting machine, the integral knit tongue extending through a throat area of the knitted component; and wherein the integral knit tongue is joined by knitting with the knitting machine to: (1) a forward portion of the throat area, and (2) at least along a portion of both of a lateral side and a medial side of the throat area of the knitted component extending through a portion of a length of the throat area in a longitudinal direction from the forward portion to an ankle opening of the upper.  On information and belief, the '562 Accused Products are not materially changed by subsequent processes after

importation, nor do those products become a trivial or nonessential component of another product after importation.

85.     By way of example only and not limitation, manufacturing of adidas's Ultraboost Summer.RDY Tokyo Shoes practices a method of manufacturing a knitted component for an article of footwear.  The Ultraboost Summer.RDY Tokyo Shoes have a Primeknit textile upper, as shown below.



86.     Manufacturing of adidas's Ultraboost Summer.RDY Tokyo Shoes practices the step of knitting a portion of the knitted component defining an upper with a knitting machine, the upper including a portion of at least one of an exterior surface of the knitted component and an opposite interior surface of the knitted component.  As shown below, the Primeknit textile upper has an exterior and an opposite interior surface of the knitted component.



87.    Manufacturing of adidas's Ultraboost Summer.RDY Tokyo Shoes practices the step of knitting an integral knit tongue that is of unitary knit construction with the upper, the integral knit tongue extending through a throat area of the knitted component, as shown below.



88.    Manufacturing of adidas's Ultraboost Summer.RDY Tokyo Shoes practices a method of manufacturing a knitted component for an article of footwear wherein the integral knit tongue is joined by knitting with the knitting machine to: (1) a forward portion of the throat area, and (2) at least along a portion of both of a lateral side and a medial side of the throat area of the knitted component extending through a portion of a length of the throat area in a longitudinal direction from the forward portion to an ankle opening of the upper, as shown below.

Page 32 - COMPLAINT FOR PATENT INFRINGEMENT



89.     On information and belief, adidas's infringement has been willful, intentional, and deliberate.  adidas knew or should have known that importing, offering to sell, selling, and/or using at least the '562 Accused Products would directly infringe the '562 patent, yet adidas infringed and continues to infringe the '562 patent.

90.     As a result of adidas's infringement of the '562 patent, Nike has suffered irreparable harm and damages.

91.     Nike has no adequate remedy at law for adidas's infringement of the '562 patent.

92.     On information and belief, adidas's infringement of the '562 patent will continue unless enjoined by this Court.

**COUNT V**
**(Patent Infringement under 35 U.S.C. § 271 of the '636 patent)**

93.     Nike incorporates by reference each of the allegations set forth in paragraphs 1–92 above.

94.     The '636 patent is generally directed to a footwear structure with an upper and an integral knit tongue that is formed of unitary knit construction with the upper and extends through a throat area of the knitted component.  The integral knit tongue of the '636 patent is formed with the upper and extends through a throat area of the knitted component and is joined to a forward portion of the throat area and along at least a portion of the medial and lateral side.

95.     On information and belief, adidas directly infringes at least claims 1, 13, and 21 of the '636 patent under at least § 271(a).  For example, at least adidas's Stan Smith Primeknit Shoes,

Page 33 - COMPLAINT FOR PATENT INFRINGEMENT

Pharrell Williams Superstar Primeknit Shoes, Ultraboost Uncaged Lab Shoes, and adidas by Stella McCartney Ultraboost Sandals (collectively, the " '636 Accused Products") satisfy each and every limitation of claim 1 because, on information and belief, those shoes have an upper and a sole structure secured to the upper, and incorporate a knitted component comprising: a portion of the knitted component defining the upper, the upper including a portion of at least one of an exterior surface of the knitted component and an opposite interior surface of the knitted component, the interior surface defining a void for receiving a foot; an integral knit tongue formed with the upper and extending through a throat area of the knitted component; and at least one raised element extending a height above the exterior surface of the knitted component, wherein the integral knit tongue is joined to a forward portion of the throat area and at least along a portion of a lateral side and a medial side of the throat area of the knitted component extending from the forward portion to an ankle opening of the upper.  adidas thus directly infringes the '636 patent by making, using, offering to sell, and/or selling the '636 Accused Products.

96.    On information and belief, adidas has indirectly infringed and continues to indirectly infringe at least claims 1, 13, and 21 of the '636 patent within the meaning of at least 35 U.S.C. § 271(b) and/or (c) by knowingly and intentionally inducing infringement and/or contributing to the infringement of the '636 patent by providing and/or selling in the United States the '636 Accused Products to customers and/or distributors of those products.

97.    On information and belief, adidas is currently actively inducing and has induced infringement of the '636 patent under 35 U.S.C. § 271(b) through, among other things, the sale and offer for sale in the United States of the '636 Accused Products to direct infringers that include, without limitation, customers and/or distributors who use, sell, offer to sell, or import the '636

113368045.2 0063718-00378

Accused Products, with the specific intent that the '636 Accused Products be used, sold, offered for sale, or imported in an infringing manner.

98.    On information and belief, adidas has encouraged and continues to encourage customers and/or distributors to use, sell, offer to sell, or import the '636 Accused Products in an infringing manner by providing product materials and directions instructing customers and/or distributors to use, sell, offer to sell, or import the '636 Accused Products in an infringing manner; by providing training, instructions, and/or technical support to customers and/or distributors instructing how to use the '636 Accused Products in an infringing manner; and by advertising, marketing, and promoting the use, sale, offers for sale, or importation of the '636 Accused Products in an infringing manner.  On information and belief, adidas has had specific intent to cause infringement of the '636 patent or was willfully blind to such infringement.

99.    On information and belief, adidas has also indirectly infringed and continues to indirectly infringe the '636 patent pursuant to 35 U.S.C. § 271(c) by contributing to the infringement of the '636 patent by providing and/or selling the '636 Accused Products in the United States to customers and/or distributors of the '636 Accused Products, structures and features of which constitute a material part of one or more claims of the '636 patent, and are not a staple article of commerce suitable for non-infringing uses, and are especially made and or adapted for use in infringing the '636 patent.

100.    On information and belief, adidas possessed and continues to possess intent to contributorily infringe the '636 patent because adidas knew that the structures and features of the '636 Accused Products are especially made or adapted for use in an infringement of one or more claims of the '636 patent and such features are not a staple article of commerce suitable for non-infringing uses.

Page 35 - COMPLAINT FOR PATENT INFRINGEMENT

101.    On information and belief, the direct infringers for adidas's contributory infringement include, without limitation, the customers and/or distributors who use the '636 Accused Products, and to whom adidas sells and offers to sell the '636 Accused Products. adidas has contributed to these customers' and/or distributors' infringement by selling and offering to sell the '636 Accused Products to them, by advertising and promoting the '636 Accused Products as embodying a material component of the patented invention, and by encouraging and providing instructions to its customers and/or distributors for using, selling, offering for sale, and/or importing the '636 Accused Products as embodying a material component of the patented inventions.

102.    By way of example only and not limitation, the Stan Smith Primeknit Shoes are an article of footwear having an upper and a sole structure secured to the upper. The Stan Smith Primeknit Shoes incorporate a knitted component, as shown below.



103.    A portion of the knitted component defines the upper of the Stan Smith Primeknit Shoes. In addition, the upper includes a portion of at least one of an exterior surface of the knitted component and an opposite interior surface of the knitted component, where the interior surface defines a void for receiving a foot.

104.    The Stan Smith Primeknit Shoes have an integral knit tongue formed with the upper and extending through a throat area of the knitted component, as shown below.

113368045.2 0063718-00378



105.    The Stan Smith Primeknit Shoes have at least one raised element extending a height above the exterior surface of the knitted component, as shown below.



106.    The Stan Smith Primeknit Shoes have an integral knit tongue that is joined to a forward portion of the throat area and at least along a portion of a lateral side and a medial side of the throat area of the knitted component extending from the forward portion to an ankle opening of the upper, as shown below.



107.    On information and belief, adidas's infringement has been willful, intentional, and deliberate.  adidas knew or should have known that importing, offering to sell, selling, and/or using at least the '636 Accused Products would directly and/or indirectly infringe the '636 patent, yet adidas infringed and continues to infringe the '636 patent.

108.     As a result of adidas's infringement of the '636 patent, Nike has suffered irreparable harm and damages.

109.     Nike has no adequate remedy at law for adidas's infringement of the '636 patent.

110.     On information and belief, adidas's infringement of the '636 patent will continue unless enjoined by this Court.

### COUNT VI
### (Patent Infringement under 35 U.S.C. § 271 of the '705 patent)

111.     Nike incorporates by reference each of the allegations set forth in paragraphs 1–110 above.

112.     The '705 patent is generally directed to a method of manufacturing an article of footwear, the method comprising flat knitting a textile element having the shape of an upper, wherein the textile element has a plurality of apertures that are formed by omitting stitches in the textile element.

113.     On information and belief, adidas directly infringes at least claims 1–8 and 11–20 of the '705 patent under at least § 271(g).  For example, adidas imports into the United States the Ultraboost Slip-On DNA, Ultraboost DNA x DFB, Ultraboost DNA CC 1, Ultraboost 1.0 DNA, Ultraboost 6.0 DNA x Parley, Ultraboost 5.0 DNA, Ultraboost 4.0 DNA, Ultraboost 21, Terrex Two Ultra Parley Trail Running, Terrex Two Ultra Parley AP, Samba Sock Primeknit, Pharrell Williams Superstar Primeknit, NMD R1 Primeknit, Futurenatural, AlphaEdge 4D, 4D Run 1.0, Crazy 1 ADV Primeknit Sock, Ultraboost DNA x James Bond, Ultraboost 20 x James Bond, adidas by Stella McCartney Ultraboost 20 (Style 1), adidas by Stella McCartney Ultraboost 20 (Style 2), Ultraboost 20 Lab, X Speedflow+ Adizero Firm Ground Cleats, X Speedflow+ Firm Ground Cleats, X Speedflow.1 Artificial Grass Cleats, X Speedflow+ FG, adidas by Stella McCartney Ultraboost Sandal, Ultraboost Uncaged Lab Shoes, and 4DFWD (collectively, the "'705 Accused

Products"), which were manufactured using a process that satisfies each and every limitation of claim 1 because, on information and belief, adidas manufactures those shoes by flat knitting a textile element having a shape of an upper in a planar configuration for the article of footwear, the knitted textile element comprising a plurality of flat knit edges defining the shape of the upper in the planar configuration, the flat knit edges being free of surrounding material from which the knitted textile element must be removed; wherein the flat knitting comprises forming a plurality of apertures in the textile element that are formed by omitting stitches in the textile element; and incorporating the knitted textile element into the article of footwear. On information and belief, the '705 Accused Products are not materially changed by subsequent processes after importation, nor do those products become a trivial or nonessential component of another product after importation.

114.    On information and belief, adidas's Primeknit uppers are flat knitted in the shape of an upper in a planar configuration, such that the knitted textile element comprises a plurality of flat knit edges defining the shape of the upper in the planar configuration, where the flat knit edges are free of surrounding material from which the knitted textile element must be removed. For example, the following photograph from the video "Process: The Adidas Ultra Boost AKA 'The World's Best Running Shoe,'" Jan. 29, 2015, available at https://www.youtube.com/watch?v=4J_kxwT9zX4, shows adidas's Primeknit upper being manufactured with flat knit edges that are free of surrounding material.



*See also* "Material Matters: Adidas Primeknit," Nov. 16, 2020, available at https://www.sneakerfreaker.com/features/material-matters/material-matters-adidas-primeknit ("Beyond the material benefits of Primeknit, its widespread use helps the planet at a granular level by optimizing the raw materials required to make a shoe. *By using a fixed length of yarn to produce the exact amount of material for the upper, nothing is wasted from cut-offs.*") (emphasis added).

115.    By way of example only and not limitation, the Ultraboost 6.0 DNA x Parley upper is flat knitted such that a plurality of apertures are formed in the textile element by omitting stitches in the textile element, as shown in the photograph below.



116.    On information and belief, adidas's infringement has been willful, intentional, and deliberate.  adidas knew or should have known that making, using, offering to sell, selling, and/or importing the '705 Accused Products would directly infringe the '705 patent, yet adidas infringed and continues to infringe the '705 patent.

117.    As a result of adidas's infringement of the '705 patent, Nike has suffered irreparable harm and damages.

118.    Nike has no adequate remedy at law for adidas's infringement of the '705 patent.

119.    On information and belief, adidas's infringement of the '705 patent will continue unless enjoined by this Court.

## COUNT VII
## (Patent Infringement under 35 U.S.C. § 271 of the '350 patent)

120.    Nike incorporates by reference each of the allegations set forth in paragraphs 1–119 above.

121.    The '350 patent is generally directed to an article of footwear that includes an upper comprising a flat knit textile element having a plurality of apertures in a forefoot region, a non-textile element secured to the portion of the flat knit textile element defining the heel region; one or more strips of non-textile material secured to the flat knit textile element on a lateral side; and a sole structure secured to the upper.

122.    On information and belief, adidas directly infringes at least claims 1, 2, 5–7, 9, 10, and 13–15 of the '350 patent under at least § 271(a). For example, at least adidas's 4D Run 1.0, Terrex Two Ultra Parley AP, Terrex Two Ultra Parley Trail Running Shoes, Ultraboost 4.0 DNA, Ultraboost 5.0 DNA, Ultraboost DNA CC_1 Shoes, Women's Ultraboost Slip-on DNA Shoes, adidas By Stella McCartney Ultraboost 20 Shoe, X Speedflow+ Adizero Firm Ground Cleats, X Speedflow+ Firm Ground Cleats, X Speedflow+ FG styles (collectively, the " '350 Accused Products") satisfy each and every limitation of claim 9 because, on information and belief, those shoes have an upper comprising: a flat knit textile element having (1) flat knit edges free of surrounding textile structure such that the flat knit edges are not surrounded by textile structure from which the flat knit textile element must be removed, and (2) a plurality of apertures formed by omitting stitches in a first portion of the flat knit textile element defining a forefoot region of the upper; a non-textile element secured to a second portion of the flat knit textile element defining the heel region of the upper; one or more strips of non-textile material secured to a third portion of the flat knit textile element on a lateral side of the upper; and a sole structure secured to the

113368045.2 0063718-00378

upper. adidas thus directly infringes the '350 patent by making, using, offering to sell, and/or selling the '350 Accused Products.

123.    On information and belief, adidas has indirectly infringed and continues to indirectly infringe at least claims 1, 2, 5–7, 9, 10, and 13–15 of the '350 patent within the meaning of at least 35 U.S.C. § 271(b) and/or (c) by knowingly and intentionally inducing infringement and/or contributing to the infringement of the '350 patent by providing and/or selling in the United States the '350 Accused Products to customers and/or distributors of those products.

124.    On information and belief, adidas is currently actively inducing and has induced infringement of the '350 patent under 35 U.S.C. § 271(b) through, among other things, the sale and offer for sale in the United States of the '350 Accused Products to direct infringers that include, without limitation, customers and/or distributors who use, sell, offer to sell, or import the '350 Accused Products, with the specific intent that the '350 Accused Products be used, sold, offered for sale, or imported in an infringing manner.

125.    On information and belief, adidas has encouraged and continues to encourage customers and/or distributors to use, sell, offer to sell, or import the '350 Accused Products in an infringing manner by providing product materials and directions instructing customers and/or distributors to use, sell, offer to sell, or import the '350 Accused Products in an infringing manner; by providing training, instructions, and/or technical support to customers and/or distributors instructing how to use the '350 Accused Products in an infringing manner; and by advertising, marketing, and promoting the use, sale, offers for sale, or importation of the '350 Accused Products in an infringing manner. On information and belief, adidas has had specific intent to cause infringement of the '350 patent or was willfully blind to such infringement.

126.    On information and belief, adidas has also indirectly infringed and continues to indirectly infringe the '350 patent pursuant to 35 U.S.C. § 271(c) by contributing to the infringement of the '350 patent by providing and/or selling the '350 Accused Products in the United States to customers and/or distributors of the '350 Accused Products, structures and features of which constitute a material part of one or more claims of the '350 patent, and are not a staple article of commerce suitable for non-infringing uses, and are especially made and or adapted for use in infringing the '350 patent.

127.    On information and belief, adidas possessed and continues to possess intent to contributorily infringe the '350 patent because adidas knew that the structures and features of the '350 Accused Products are especially made or adapted for use in an infringement of one or more claims of the '350 patent and such features are not a staple article of commerce suitable for non-infringing uses.

128.    On information and belief, the direct infringers for adidas's contributory infringement include, without limitation, the customers and/or distributors who use the '350 Accused Products, and to whom adidas sells and offers to sell the '350 Accused Products.  adidas has contributed to these customers' and/or distributors' infringement by selling and offering to sell the '350 Accused Products to them, by advertising and promoting the '350 Accused Products as embodying a material component of the patented invention, and by encouraging and providing instructions to its customers and/or distributors for using, selling, offering for sale, and/or importing the '350 Accused Products as embodying a material component of the patented inventions.

129.    On information and belief, adidas's Primeknit uppers are flat knitted in the shape of an upper in a planar configuration, such that the knitted textile element comprises a plurality of

flat knit edges defining the shape of the upper in the planar configuration, where the flat knit edges are free of surrounding material from which the knitted textile element must be removed.  For example, the following photograph from the video "Process: The Adidas Ultra Boost AKA 'The World's Best Running Shoe,'" Jan. 29, 2015, available at https://www.youtube.com/watch?v=4J_kxwT9zX4, shows adidas's Primeknit upper being manufactured with flat knit edges that are free of surrounding material.



*See also* "Material Matters: Adidas Primeknit," Nov. 16, 2020, available at https://www.sneakerfreaker.com/features/material-matters/material-matters-adidas-primeknit ("Beyond the material benefits of Primeknit, its widespread use helps the planet at a granular level by optimizing the raw materials required to make a shoe.  *By using a fixed length of yarn to produce the exact amount of material for the upper, nothing is wasted from cut-offs.*") (emphasis added).

130.     By way of example only and not limitation, the Ultraboost 5.0 DNA upper is flat knitted such that a plurality of apertures are formed by omitting stitches in the forefoot region of the upper, as shown in the photograph below.



131.    The Ultraboost 5.0 DNA has a non-textile element secured to a second portion of the flat knit textile element defining the heel region of the upper, as shown in the photograph below.



132.    The Ultraboost 5.0 DNA has one or more strips of non-textile material secured to a third portion of the flat knit textile element on a lateral side of the upper, as shown in the photograph below.



133.    The Ultraboost 5.0 DNA has a sole structure secured to the upper, as shown in the photograph below.



134.    On information and belief, adidas's infringement has been willful, intentional, and deliberate.  adidas knew or should have known that making, using, offering to sell, selling, and/or importing the '350 Accused Products would directly and/or indirectly infringe the '350 patent, yet adidas infringed and continues to infringe the '350 patent.

135.    As a result of adidas's infringement of the '350 patent, Nike has suffered irreparable harm and damages.

136.    Nike has no adequate remedy at law for adidas's infringement of the '350 patent.

137.    On information and belief, adidas's infringement of the '350 patent will continue unless enjoined by this Court.

## COUNT VIII
### (Patent Infringement under 35 U.S.C. § 271 of the '511 patent)

138.     Nike incorporates by reference each of the allegations set forth in paragraphs 1–137 above.

139.     The '511 patent is generally directed to an upper for an article of footwear, which comprises a flat knit textile having first and second knit strips that have different properties and that are positioned adjacent to each other along the lateral or medial side of the upper.

140.     On information and belief, adidas directly infringes at least claims 1–3, 5, 9–11, 15, and 17–20 of the '511 patent under at least § 271(a).  For example, at least adidas's Ultraboost Summer.RDY Tokyo Shoes, Ultraboost DNA CC_1 Shoes, Ultraboost 6.0 DNA x Parley Shoes, Ultraboost 5.0 DNA Shoes, Ultraboost 21 Shoes, Ultraboost 20 Shoes, Tour360 XT Primeknit Shoes, Terrex Two Ultra Parley Trail Running Shoes, Terrex Two Ultra Parley AP Shoes, Stan Smith Primeknit Shoes, Samba Sock Primeknit Shoes, Pharrell Williams Superstar Primeknit Shoes, Lucas Premiere Primeknit Shoes, FutureNatural Shoes, Alphaedge 4D Shoes, Adizero Primeknit SK Cleats, Adizero 11.0 Primeknit Football Cleats, Ultraboost Slip-On DNA Shoes, NMD_R1 Primeknit Shoes, 4D Run 1.0 Shoes, Crazy 1 ADV Primeknit Sock Shoes, Crossknit DPR Golf Shoes, Terrex Free Hiker GTX, X Speedflow+ Adizero Firm Ground Cleats, X Speedflow, Ultraboost Uncaged Lab, and Terrex Free Hiker Primeblue Hiking (collectively, the "'511 Accused Products") satisfy each and every limitation of claim 1 because, on information and belief, those shoes have an upper comprising: a flat knit textile element comprising (1) flat knit edges free of surrounding textile structure such that the flat knit edges are not surrounded by textile structure from which the textile element must be removed, at least one flat knit edge being a curved flat knit edge, and (2) a first knit strip having a first property and a second knit strip having a second property that is different from the first property; wherein the first knit strip and

Page 47 - COMPLAINT FOR PATENT INFRINGEMENT

the second knit strip are positioned adjacent to each other along one or more of a lateral side and a medial side of the upper.  adidas thus directly infringes the '511 patent by making, using, offering to sell, and/or selling the '511 Accused Products.

141.    On information and belief, adidas has indirectly infringed and continues to indirectly infringe at least claims 1–3, 5, 9–11, 15, and 17–20 of the '511 patent within the meaning of at least 35 U.S.C. § 271(b) and/or (c) by knowingly and intentionally inducing infringement and/or contributing to the infringement of the '511 patent by providing and/or selling in the United States the '511 Accused Products to customers and/or distributors of those products.

142.    On information and belief, adidas is currently actively inducing and has induced infringement of the '511 patent under 35 U.S.C. § 271(b) through, among other things, the sale and offer for sale in the United States of the '511 Accused Products to direct infringers that include, without limitation, customers and/or distributors who use, sell, offer to sell, or import the '511 Accused Products, with the specific intent that the '511 Accused Products be used, sold, offered for sale, or imported in an infringing manner.

143.    On information and belief, adidas has encouraged and continues to encourage customers and/or distributors to use, sell, offer to sell, or import the '511 Accused Products in an infringing manner by providing product materials and directions instructing customers and/or distributors to use, sell, offer to sell, or import the '511 Accused Products in an infringing manner; by providing training, instructions, and/or technical support to customers and/or distributors instructing how to use the '511 Accused Products in an infringing manner; and by advertising, marketing, and promoting the use, sale, offers for sale, or importation of the '511 Accused Products in an infringing manner.  On information and belief, adidas has had specific intent to cause infringement of the '511 patent or was willfully blind to such infringement.

Page 48 - COMPLAINT FOR PATENT INFRINGEMENT

144.    On information and belief, adidas has also indirectly infringed and continues to indirectly infringe the '511 patent pursuant to 35 U.S.C. § 271(c) by contributing to the infringement of the '511 patent by providing and/or selling the '511 Accused Products in the United States to customers and/or distributors of the '511 Accused Products, structures and features of which constitute a material part of one or more claims of the '511 patent, and are not a staple article of commerce suitable for non-infringing uses, and are especially made and or adapted for use in infringing the '511 patent.

145.    On information and belief, adidas possessed and continues to possess intent to contributorily infringe the '511 patent because adidas knew that the structures and features of the '511 Accused Products are especially made or adapted for use in an infringement of one or more claims of the '511 patent and such features are not a staple article of commerce suitable for non-infringing uses.

146.    On information and belief, the direct infringers for adidas's contributory infringement include, without limitation, the customers and/or distributors who use the '511 Accused Products, and to whom adidas sells and offers to sell the '511 Accused Products.  adidas has contributed to these customers' and/or distributors' infringement by selling and offering to sell the '511 Accused Products to them, by advertising and promoting the '511 Accused Products as embodying a material component of the patented invention, and by encouraging and providing instructions to its customers and/or distributors for using, selling, offering for sale, and/or importing the '511 Accused Products as embodying a material component of the patented inventions.

147.    On information and belief, adidas's Primeknit uppers are flat knitted in the shape of an upper in a planar configuration, such that the knitted textile element comprises a plurality of

flat knit edges defining the shape of the upper in the planar configuration, where the flat knit edges are free of surrounding material from which the knitted textile element must be removed.   For example, the following photograph from the video "Process: The Adidas Ultra Boost AKA 'The World's Best Running Shoe,'" Jan. 29, 2015, available at https://www.youtube.com/watch?v=4J_kxwT9zX4, shows adidas's Primeknit upper being manufactured with flat knit edges that are free of surrounding material.



*See also* "Material Matters: Adidas Primeknit," Nov. 16, 2020, available at https://www.sneakerfreaker.com/features/material-matters/material-matters-adidas-primeknit ("Beyond the material benefits of Primeknit, its widespread use helps the planet at a granular level by optimizing the raw materials required to make a shoe.  *By using a fixed length of yarn to produce the exact amount of material for the upper, nothing is wasted from cut-offs.*") (emphasis added).

148.    By way of example only and not limitation, the Ultraboost Summer.RDY Tokyo has a flat knit textile element comprising flat knit edges free of surrounding textile structure such that the flat knit edges are not surrounded by textile structure from which the textile element must be removed, at least one flat knit edge being a curved flat knit edge, as shown below.



149.    The upper of the Ultraboost Summer.RDY Tokyo has a first knit strip having a first property and a second knit strip having a second property that is different from the first property, as shown below.  The first and second knit strips having different properties are positioned adjacent to each other along the lateral side of the upper.



150.    On information and belief, adidas's infringement has been willful, intentional, and deliberate.  adidas knew or should have known that making, using, offering to sell, selling, and/or importing the '511 Accused Products would directly and/or indirectly infringe the '511 patent, yet adidas infringed and continues to infringe the '511 patent.

151.    As a result of adidas's infringement of the '511 patent, Nike has suffered irreparable harm and damages.

152.    Nike has no adequate remedy at law for adidas's infringement of the '511 patent.

153.    On information and belief, adidas's infringement of the '511 patent will continue unless enjoined by this Court.

Page 51 - COMPLAINT FOR PATENT INFRINGEMENT

## COUNT IX
### (Patent Infringement under 35 U.S.C. § 271 of the '758 patent)

154.    Nike incorporates by reference each of the allegations set forth in paragraphs 1–153 above.

155.    The '758 patent is generally directed to an article of footwear that includes an upper comprising a flat knit textile element; a non-textile element secured to the heel region of the upper; and a plurality of strips of non-textile material that are spaced apart and parallel to each other on a lateral side of the upper.

156.    On information and belief, adidas directly infringes at least claims 1 and 10 of the '758 patent under at least § 271(a).  For example, at least adidas's 4D Run 1.0 Shoes, Adizero 11.0 Primeknit Football Cleats, Adizero Primeknit SK Cleats, Lucas Premiere Primeknit Shoes, Stabil Next Gen Primeblue Handball Shoes, Terrex Free Hiker COLD.RDY Hiking Boots, Terrex Free Hiker GTX, Terrex Free Hiker Hiking Shoes, Terrex Free Hiker Parley Hiking Shoes, Terrex Free Hiker Primeblue Hiking Shoes, Terrex Two Ultra Parley AP Shoes, Terrex Two Ultra Parley Trail Running Shoes, Ultraboost 21 Shoes, Ultraboost DNA CC_1 Shoes, Ultraboost Summer.RDY Tokyo Shoes, X Speedflow+ Adizero Firm Ground Cleats, X Speedflow+ Firm Ground Cleats, X Speedflow.1 Artificial Grass Cleats, and X Speedflow+ FG (collectively, the " '758 Accused Products") satisfy each and every limitation of claim 10 because, on information and belief, those shoes have an upper comprising: a knit textile element having knit edges free of surrounding textile structure such that the knit edges are not surrounded by textile structure from which the textile element must be removed, the knit element at least partially defining a forefoot region and a heel region and having a longitudinal axis extending between the forefoot region and the heel region, wherein knit columns of the knit textile element have a knitting direction parallel to the longitudinal axis between the forefoot region and the heel region; a non-textile element secured to

Page 52 - COMPLAINT FOR PATENT INFRINGEMENT

a first portion of the knit textile element defining the heel region of the upper; a plurality of strips of non-textile material secured to a second portion of the knit textile element on a lateral side of the upper, the strips of non-textile material being spaced apart and parallel to each other on the lateral side; and a sole structure secured to the upper.  adidas thus directly infringes the '758 patent by making, using, offering to sell, and/or selling the '758 Accused Products.

157.    On information and belief, adidas has indirectly infringed and continues to indirectly infringe at least claims 1 and 10 of the '758 patent within the meaning of at least 35 U.S.C. § 271(b) and/or (c) by knowingly and intentionally inducing infringement and/or contributing to the infringement of the '758 patent by providing and/or selling in the United States the '758 Accused Products to customers and/or distributors of those products.

158.    On information and belief, adidas is currently actively inducing and has induced infringement of the '758 patent under 35 U.S.C. § 271(b) through, among other things, the sale and offer for sale in the United States of the '758 Accused Products to direct infringers that include, without limitation, customers and/or distributors who use, sell, offer to sell, or import the '758 Accused Products, with the specific intent that the '758 Accused Products be used, sold, offered for sale, or imported in an infringing manner.

159.    On information and belief, adidas has encouraged and continues to encourage customers and/or distributors to use, sell, offer to sell, or import the '758 Accused Products in an infringing manner by providing product materials and directions instructing customers and/or distributors to use, sell, offer to sell, or import the '758 Accused Products in an infringing manner; by providing training, instructions, and/or technical support to customers and/or distributors instructing how to use the '758 Accused Products in an infringing manner; and by advertising, marketing, and promoting the use, sale, offers for sale, or importation of the '758 Accused Products

in an infringing manner. On information and belief, adidas has had specific intent to cause infringement of the '758 patent or was willfully blind to such infringement.

160. On information and belief, adidas has also indirectly infringed and continues to indirectly infringe the '758 patent pursuant to 35 U.S.C. § 271(c) by contributing to the infringement of the '758 patent by providing and/or selling the '758 Accused Products in the United States to customers and/or distributors of the '758 Accused Products, structures and features of which constitute a material part of one or more claims of the '758 patent, and are not a staple article of commerce suitable for non-infringing uses, and are especially made and or adapted for use in infringing the '758 patent.

161. On information and belief, adidas possessed and continues to possess intent to contributorily infringe the '758 patent because adidas knew that the structures and features of the '758 Accused Products are especially made or adapted for use in an infringement of one or more claims of the '758 patent and such features are not a staple article of commerce suitable for non-infringing uses.

162. On information and belief, the direct infringers for adidas's contributory infringement include, without limitation, the customers and/or distributors who use the '758 Accused Products, and to whom adidas sells and offers to sell the '758 Accused Products. adidas has contributed to these customers' and/or distributors' infringement by selling and offering to sell the '758 Accused Products to them, by advertising and promoting the '758 Accused Products as embodying a material component of the patented invention, and by encouraging and providing instructions to its customers and/or distributors for using, selling, offering for sale, and/or importing the '758 Accused Products as embodying a material component of the patented inventions.

Page 54 - COMPLAINT FOR PATENT INFRINGEMENT

113368045.2 0063718-00378

163.    On information and belief, adidas's Primeknit uppers are flat knitted in the shape of an upper in a planar configuration, such that the knitted textile element comprises a plurality of flat knit edges defining the shape of the upper in the planar configuration, where the flat knit edges are free of surrounding material from which the knitted textile element must be removed.  For example, the following photograph from the video "Process: The Adidas Ultra Boost AKA 'The World's Best Running Shoe,'" Jan. 29, 2015, available at https://www.youtube.com/watch?v=4J_kxwT9zX4, shows adidas's Primeknit upper being manufactured with flat knit edges that are free of surrounding material.



*See also* "Material Matters: Adidas Primeknit," Nov. 16, 2020, available at https://www.sneakerfreaker.com/features/material-matters/material-matters-adidas-primeknit ("Beyond the material benefits of Primeknit, its widespread use helps the planet at a granular level by optimizing the raw materials required to make a shoe.  *By using a fixed length of yarn to produce the exact amount of material for the upper, nothing is wasted from cut-offs.*") (emphasis added).

164.    By way of example only and not limitation, the upper of the Adizero Primeknit SK Cleats includes a knit element that at least partially defines the forefoot region and a heel region. Furthermore, as shown below, knit columns of the knit textile element have a knitting direction parallel to the longitudinal axis between the forefoot region and the heel region.



165.    The Adizero Primeknit SK Cleat has a non-textile element secured to a first portion of the knit textile element defining the heel region of the upper, as shown below.



166.    The Adizero Primeknit SK Cleat has a plurality of strips of non-textile material secured to a second portion of the knit textile element on a lateral side of the upper, the strips of non-textile material being spaced apart and parallel to each other on the lateral side, as shown below.



167.    The Adizero Primeknit SK Cleat has a sole structure secured to the upper, as shown below.



168.    On information and belief, adidas's infringement has been willful, intentional, and deliberate.  adidas knew or should have known that making, using, offering to sell, selling, and/or importing the '758 Accused Products would directly and/or indirectly infringe the '758 patent, yet adidas infringed and continues to infringe the '758 patent.

169.    As a result of adidas's infringement of the '758 patent, Nike has suffered irreparable harm and damages.

170.    Nike has no adequate remedy at law for adidas's infringement of the '758 patent.

Page 57 - COMPLAINT FOR PATENT INFRINGEMENT

171.    On information and belief, adidas's infringement of the '758 patent will continue unless enjoined by this Court.

## JURY DEMAND

172.    Pursuant to Federal Rule of Civil Procedure 38(b), Nike hereby demands a jury trial on all issues so triable in this action**.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nike respectfully requests this Court to enter judgment against the Defendants adidas AG, adidas North America, Inc., and adidas America, Inc., and grant the following relief:

A.    The entry of judgment in favor of Nike and against adidas;

B.    A finding that the adidas has infringed claims of the following U.S. Patents under 35 U.S.C. § 271(a), (b), (c) and/or (g):  U.S. Patent No. 7,814,598; U.S. Patent No. 8,266,749; U.S. Patent  No. 8,898,932;  U.S.  Patent  No.  9,060,562;  U.S.  Patent  No.  9,510,636;  U.S.  Patent No. 9,743,705;  U.S.  Patent  No.  9,907,350;  U.S.  Patent  No.  9,918,511;  and  U.S.  Patent  No. 9,924,758.

C.    An  award  of  damages  against  adidas  adequate  to  compensate  Nike  for  the infringement, but in no event less than a reasonable royalty as permitted under  35 U.S.C. § 284, together with prejudgment interest and post-judgment interest and costs;

D.    A finding that adidas's infringement is and has been willful, and a judgment that Nike is entitled to discretionary enhancement of its damages and other relief as provided by  35 U.S.C. § 284;

E.    A  finding  that  this  case  is  exceptional,  and  an  award  to  Nike  of  its  reasonable attorneys' fees, costs, and expenses as permitted pursuant to 35 U.S.C. § 285;

F.     A permanent injunction prohibiting further infringement by adidas, and each of its subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, employees, and all persons in active concert or participation with it; and

G.     Such other relief that Nike is entitled to under law and any other and further relief that this Court or a jury may deem just and proper.

December 8, 2021                              Respectfully submitted,

                                             By:   _/s/ B. John Casey_____
                                             Christopher J. Renk
                                             Michael J. Harris
                                             Aaron P. Bowling
                                             ARNOLD & PORTER KAYE SCHOLER LLP
                                             70 W. Madison Street, #4200
                                             Chicago, IL 60602
                                             Telephone: (312) 583-2300
                                             Facsimile: (312) 583-2360

                                             Bridgette C. Gershoni
                                             ARNOLD & PORTER KAYE SCHOLER LLP
                                             601 Massachusetts Ave. NW
                                             Washington, DC 20001
                                             Telephone: (202) 942-5000
                                             Facsimile: (202) 942-5999

                                             B. John Casey (OSB No. 120025)
                                             John.Casey@stoel.com
                                             Elliott Williams (OSB No. 144835)
                                             Elliott.Williams@stoel.com
                                             STOEL RIVES LLP
                                             760 SW Ninth Avenue, Suite 3000
                                             Portland, OR 97205
                                             Telephone: (503) 224-3380
                                             Facsimile: (503) 220-2480

                                             *Attorneys for Plaintiff Nike, Inc.*

113368045.2 0063718-00378